**Velma MARTIN, on behalf of herself and all others similarly situated, Plaintiff–Appellee,**

v.

**Louis J. SULLIVAN, Secretary of the Department of Health and Human Services,\* Defendant–Appellant.**

Nos. 88–15024, 88–15279.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted May 3, 1989.

Decided Aug. 31, 1990.

---

\* Louis J. Sullivan is substituted for his predecessor, Otis R. Bowen, M.D., as Secretary of Health and Human Services. Fed.R.App.P. 43(c)(1).

John S. Koppel, Civ. Div., U.S. Dept. of Justice, Washington, D.C., for defendant-appellant.

Gill Deford, Nat. Senior Citizens Law Center, Los Angeles, Cal., for plaintiff-appellee.

Before POOLE, BEEZER and TROTT, Circuit Judges.

POOLE, Circuit Judge:

The Secretary of Health and Human Services (Secretary) appeals the decision of the district court invalidating one of his regulations, 20 C.F.R. § 416.1123(b)(1) (1988), which characterized as "income" for purposes of assessing a person's eligibility for Supplemental Security Income (SSI) benefits amounts not received in hand but which were instead being withheld by other agencies to recoup prior overpayments. *Martin v. Bowen,* 694 F.Supp. 718 (N.D. Cal.1988).

## BACKGROUND

The facts of this case are not in dispute. As the widow of a former railroad employee, Mrs. Velma Martin (Martin) became eligible to receive monthly survivor's benefits from the Railroad Retirement Board (Board) beginning in December 1978. In May 1985, the Board notified Martin that she had been overpaid during the first four years in the amount of $8,528.92 because she had neglected to report additional income. To recover the amount owing, the Board informed Martin that her entire monthly benefit of $268.16 would be suspended for a period of 34 months. As a result of this withholding Martin's monthly income was reduced to about $386, the amount she received in Social Security Retirement Benefits.

Martin petitioned the Board for a waiver of the recovery. Her request was denied, however, because she was deemed to be at fault in causing the overpayment. In January 1987, Martin applied to the Social Security Administration (SSA) for SSI benefits to supplement her Social Security Retirement Benefits. The SSA denied Martin's application based upon its determination that her total income exceeded the maximum income permissible for SSI eligibility. In computing Martin's income, the agency relied on 20 C.F.R. § 416.1123(b)(1).[1] Based upon that regula-

---

1. This regulation reads in pertinent part:
   (b) *Amount considered as income.*
   We may include more or less of your unearned income than you actually receive.

   (1) We include more than you actually receive where another benefit payment ... has

tion, the SSA included as income attributable to Martin those sums which were being withheld by the Board to recover the prior overpayment of benefits.

Martin exhausted the available administrative channels of review without success. Subsequently, she brought a challenge to 20 C.F.R. § 416.1123(b)(1) in district court, claiming that the regulation violated both the language and the intent of Title XVI of the Social Security Act (Act), 42 U.S.C. § 1381, et seq., and that it denied her equal protection under the fifth amendment.[2] The parties filed cross motions for summary judgment and Martin filed a motion for certification of a circuit-wide class of plaintiffs. Martin also filed a motion for monetary and injunctive relief on behalf of herself and the class.

In No. 88–15024 the Secretary appeals the district court's order granting plaintiff's motions for summary judgment and class certification. No. 88–15799 represents the Secretary's appeal from the court's second order affording to plaintiff and plaintiff's class injunctive and monetary relief. These two appeals have been consolidated. The district court had jurisdiction over the action pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3), and 28 U.S.C. § 1361. We have jurisdiction under 28 U.S.C. § 1291.

## DISCUSSION

The district court held that the regulation contravened "both an express statutory command and the overriding intent of Congress"[3] as embodied in 42 U.S.C. § 1382a(a)(2)(B) of the Act, which defines as income "payments *received* as an annuity, pension, retirement or disability benefit ..." (district court's emphasis).[4] The district court construed the "any payments received" language of the statute as imposing a requirement of "actual receipt." Thus, because the Secretary's regulation permitted the SSA to count toward a claimant's income benefits which were only constructively received, the court ruled that 20 C.F.R. § 416.1123(b)(1) was inconsistent with its congressional statutory progenitor.

In arriving at its conclusion, the district court departed from the reasoning which has now been adopted by each of the four circuits that have considered this issue. The First, Second, Fifth and Seventh circuits have upheld the validity of the Secretary's regulation, viewing the use of the term "received" in § 1382a(a)(2)(B) not as obtruding any special conditions for making income determinations but rather as nothing more than a mere "grammatical link between 'payments' and the descriptive list of benefits which follows." *Lyon v. Bowen,* 802 F.2d 794, 798 (5th Cir.1986).[5]

After reviewing the provision in the context of the entire statutory scheme, we agree with the other circuits that the more plausible construction of § 1382a(a)(2)(B) is that which rejects an actual receipt requirement. As stated in *Robinson v. Bowen,* "[t]he term 'received' appears only in subsection (a)(2)(B) of § 1382a(a)(2); if Congress had specifically intended the use of the term 'received' in subsection (a)(2)(B) to impose a condition of actual receipt on the

been reduced to recover a previous overpayment. You are repaying a legal obligation through the withholding of portions of your benefit amount, and the amount of your debt reduction is also part of your unearned income.

2. The district court declined to address the merits of Martin's equal protection claim.

3. *Martin,* 694 F.Supp. at 724.

4. *Martin,* 694 F.Supp. at 720.

5. In addition to the *Lyon* case, the validity of 20 C.F.R. § 416.1123(b)(1) was upheld in *Robinson v. Bowen,* 650 F.Supp. 1495 (S.D.N.Y.), *aff'd,* 828 F.2d 71 (2d Cir.1987); *Szlosek v. Secretary of Health and Human Services,* 674 F.Supp. 944 (D.Mass.1987), *aff'd,* 861 F.2d 13 (1st Cir.1988) (per curiam); *Healea v. Bowen,* 871 F.2d 48 (7th Cir.1989).

items enumerated in that subsection, it knew how and would have imposed such a requirement in the other subsections as well." 650 F.Supp. 1495, 1498 (S.D.N.Y.) (footnote omitted), *aff'd*, 828 F.2d 71 (2d Cir.1987).

The district court also found that the regulation conflicted with the congressional intent underlying the SSI program. It recognized, correctly, that Congress had dual policy concerns in mind when it implemented the SSI program. The first was to assist this Nation's destitute, aged, blind and disabled by guaranteeing to them a minimum level of income to meet their needs for food, clothing and shelter. *See Lyon*, 802 F.2d at 797. The second, competing, goal was to preserve the fiscal solvency of the SSI program by protecting its coffers from dissipation through neglect, abuse and fraud. *Id.* Evaluating these conflicting goals, the district court reasoned that since Congress, in 42 U.S.C. § 1383(b)(1)(B), had specifically limited the SSA's rate of recovery of overpaid *SSI* benefits to no greater than ten percent of the debtor's regular monthly payment under that program, by logical extension Congress must have also intended for the SSA to abide by similar standards when dealing with debtors to other benefit programs. This demonstrated, concluded the court, that Congress envisioned the primacy of the first goal over the second.

The consequence of striking the balance of goals in this manner is that SSI funds will be used to partially subsidize a claimant's debt to an outside program whenever the rate of benefits being withheld exceeds 10 percent. We find it difficult to accept

the proposition that Congress, in enacting § 1383(b)(1)(B), meant to occasion such a serious externality.[6] Had Congress intended to impose restrictions on the SSA's ability to count as income monies being withheld *regardless of the benefit program involved*, we believe that Congress would have made its mandate more explicit. Absent less ambiguous language, we cannot interpret § 1383(b)(1)(B) so broadly.

Several of the courts which have upheld the Secretary's regulation have suggested that their decisions rested to a considerable degree upon the fact that the hardship on the claimants had been mitigated to some extent since they were afforded the option of reduced withholding. *See Lyon*, 802 F.2d at 800–01; *Robinson*, 650 F.Supp. at 1500–01. Here, the Secretary has adduced evidence demonstrating that the Board has a policy in place to permit reduced withholding, and that, indeed, Martin has been offered that option. We find to be without merit Martin's assertion that the Secretary's regulation should be invalidated simply because not all of the programs potentially affected by it clearly provide for reduced withholding. The Secretary has represented the thrust of the general policy. If, in particular situations, it has not been applied, that generally would be the subject of administrative concern and consideration.

Accordingly, we vacate the judgment of the district court and remand for further proceedings consistent with this opinion.

---

6. This is not to imply that the ramifications inherent in impairing a claimant's ability to meet his subsistence needs are likely to be any less serious. However, as other courts that have been faced with this challenge have pointed out, by instructing the Secretary to recover overpaid SSI benefits by reducing future SSI payments in

cases where the claimant was not without fault, § 1383(b)(1)(B) conclusively demonstrates Congress' willingness to compromise its goal of providing a guaranteed subsistence level of income when necessary to preserve the fiscal integrity of the SSI program. *See, e.g., Robinson*, 650 F.Supp. at 1500.