**Robert CLARK, By His Next Friend, Evelyn CLARK, Appellee,**

v.

**IOWA DEPARTMENT OF HUMAN SERVICES, Appellant.**

No. 93–365.

Supreme Court of Iowa.

March 23, 1994.

Bonnie J. Campbell, Atty. Gen., John M. Parmeter, Sp. Asst. Atty. Gen., and Daniel W. Hart, Asst. Atty. Gen., for appellant.

Thomas A. Krause, Des Moines, and Gail R. Klearman, Dubuque, for appellee.

Considered by McGIVERIN, C.J., and HARRIS, LARSON, LAVORATO, and NEUMAN, JJ.

LARSON, Justice.

The Iowa Department of Human Services (DHS) has appealed an order of the district court establishing the eligibility of Robert Clark for Medicaid benefits, despite the fact his pension and social security benefits exceeded Medicaid income limits. We reverse and remand.

Robert Clark, seventy-eight, moved into a nursing home in 1991. His wife, Evelyn, remained at home. In 1992, Evelyn filed a petition for separate maintenance and an application for temporary support. She asked that the marriage of the parties be preserved but that Robert be required to pay monthly support to Evelyn. The acknowledged purpose of the separate maintenance action was to reduce Robert's monthly income below the limit for Medicaid benefits. The district court ordered Robert to pay Evelyn $1135 per month.

Evelyn then applied to the DHS for Medicaid benefits on behalf of Robert. The application was denied on the ground that Robert's income was too high and could not be reduced, for Medicaid purposes, by the spousal support order. An administrative law judge and the director of the DHS affirmed. On judicial review, the district court reversed, ruling that Evelyn's separate maintenance order reduced Robert's income sufficiently to qualify him for benefits.[1]

The background of the Medicaid program is explained in a federal case:

> The Medicaid program, established in 1965 as Title XIX of the Social Security Act, 42 U.S.C. §§ 1396–1396q, as amended, is a cooperative federal-state program designed to "provid[e] federal financial assistance to States that choose to reimburse certain costs of medical treatment for needy persons." States participating in the program must develop Medicaid plans that contain "reasonable standards" for determining Medicaid eligibility. These

---

1. In a supplemental brief, Evelyn states that a qualified domestic relations order has been entered and that her husband's pension check is now split. This was not in the record at the time the district court ruled on the judicial review, and we cannot consider it. Similarly, the DHS points out that, in the future, the Clarks and other applicants similarly situated will be able to use "Miller Trusts" under federal law, which will permit them to qualify for Medicaid benefits. This matter likewise is not before us in this appeal.

plans must comply with the Medicaid statute, Medicaid regulations, and the Secretary's own administrative rules. The Medicaid program is the primary source of public assistance for elderly persons living in nursing homes.

*Washington v. Bowen,* 815 F.2d 549, 552 (9th Cir.1987) (citations omitted).

The DHS contends that income for purposes of Medicaid eligibility must be determined prior to any reduction for family support. *See Cervantez v. Sullivan,* 963 F.2d 229 (9th Cir.1992) (income not to be reduced by garnishment for child support); *Emerson v. Steffen,* 959 F.2d 119 (8th Cir.1992) (income not to be reduced by child support, applying Minnesota law); *Crider v. State,* 555 So.2d 408 (Fla.App. 1st Dist.1989) (income not to be reduced by spousal support order). The test is not what income is actually *available* to the recipient but what the recipient initially received. *Martin v. Sullivan,* 932 F.2d 1273, 1275, 1278 (9th Cir.1990).

In *Torner v. State,* 399 N.W.2d 381 (Iowa 1987), a wife who lived in a nursing home had more income than her husband, who remained in the family home. Under Medicaid rules, a wife could divert income to her husband to maintain her eligibility for Medicaid only if the husband's income was less than $284.30 per month. The Torners argued that this limitation on their ability to divert income was improper because it ignored their "marital history of mutual support." *Id.* at 386. We rejected that argument and held that the wife would not be considered to be half owner of the income received by her husband. *Id.* at 386–87.

This rule is sometimes referred to as the "name on the check" rule under which income is attributed to the person in whose name it is received. This in fact is the rule adopted by the Secretary of Health and Human Services to be applied at least in those states that are not community property states. *See Bowen,* 815 F.2d at 552.

In community property states, the income is divided in accordance with the state's laws, rather than the rules of the Secretary. The reason is that, in a joint federal-state project such as Medicaid, the federal law gives deference to state property law. *Id.* at 554–55.

Iowa, of course, is not a community property state. *See In re Marriage of Schissel,* 292 N.W.2d 421, 424 (Iowa 1980). We hold that, under Iowa property law, income for Medicaid purposes is to be determined as of its receipt, not after it is reduced by payments under a spousal support order. We therefore reverse and remand for reinstatement of the final order of the DHS.

**REVERSED AND REMANDED.**