**Don McPECK and Lorna McPeck,**
**Plaintiffs–Appellants,**

v.

**COLORADO DEPARTMENT**
**OF SOCIAL SERVICES,**
**Defendant–Appellee.**

**No. 94CA1591.**

Colorado Court of Appeals,
Div. I.

May 30, 1996.

Joe Pickard & Associates, P.C., Joe Pickard, Doris A. Waters, Denver, for Plaintiffs–Appellants.

Gale A. Norton, Attorney General, Stephen K. ErkenBrack, Chief Deputy Attorney General, Timothy M. Tymkovich, Solicitor General, Joanna L. Wilkerson, Assistant Attorney General, Denver, for Defendant–Appellee.

Opinion by Judge METZGER.

In this action for judicial review of an administrative agency decision pursuant to § 24–4–106, C.R.S. (1988 Repl.Vol. 10A), plaintiffs, Don and Lorna McPeck, appeal the district court's order affirming the decision of the Colorado Department of Social Services (the Department) which revoked their license to operate a child care facility. We affirm.

Plaintiffs operated a licensed day care facility in Castle Rock. In addition, they also cared for their own granddaughter on occasion.

When she was about three years old, plaintiffs' granddaughter began complaining to her parents of soreness around her vaginal area. The parents noticed that the child had also begun exhibiting masturbatory behavior.

Prompted by these observations, the child's mother asked the child whether anyone had touched her vaginal area. The child answered, "No." The mother then asked if "grandpa," referring to plaintiff Don McPeck, had ever touched her there. The child responded, "[G]randpa touches my potty and he wants me to put my hands down there, too."

These statements were reported to authorities and ultimately led to the child undergoing regular treatment by a psychologist. During the course of that treatment, the child made statements and gave further indication that Don McPeck had inappropriately touched "her potty."

Shortly thereafter, administrative proceedings were initiated pursuant to § 26–6–108, C.R.S. (1989 Repl.Vol. 11B), to summarily revoke plaintiffs' license to operate a day care facility. The Administrative Law Judge (ALJ) conducted a hearing concerning the admissibility of hearsay evidence regarding the child's statements. He determined that the child's hearsay statements to her parents and to the therapist were admissible. Moreover, the parties stipulated that the child would not be required to testify during the proceedings.

Thereafter, the ALJ heard extensive testimony. In a lengthy and well-reasoned decision, the ALJ concluded that plaintiff Don McPeck had sexually abused his granddaughter and revoked plaintiffs' day care license pursuant to § 26–6–108(2)(l), C.R.S. (1989 Repl.Vol. 11B).

Plaintiffs then sought judicial review pursuant to § 24–4–106. The district court af-

firmed the decision of the ALJ, and this appeal followed.

## I.

Plaintiffs contend that § 13–25–129, C.R.S. (1987 Repl.Vol. 6A) provides the appropriate legal standard for admitting hearsay statements of a child regarding sexual abuse, and that that standard was not properly applied by the ALJ. We agree with the former contention but not the latter.

## A.

■ Plaintiffs argue that, in an administrative adjudication in which the sexual abuse of a child is an issue, § 13–25–129 provides the appropriate standard for determining the admissibility of hearsay statements of the child-declarant which describe the alleged sexual abuse. We agree.

■ Generally, administrative hearings need not comply with the strict rules of evidence. The standard to be applied is whether the evidence possesses probative value commonly accepted by reasonable and prudent persons in the conduct of their affairs. Section 24–4–105(7), C.R.S. (1988 Repl.Vol. 10A); *Partridge v. State,* 895 P.2d 1183 (Colo.App.1995).

However, when unsworn hearsay constitutes all or most of the factual support for an administrative decision, the importance of providing the adversary with the opportunity to test on cross-examination the perception, memory, narration, and veracity of a declarant is undeniable. *Reguero v. Teacher Standards & Practices Commission,* 312 Or. 402, 822 P.2d 1171 (1991).

At the same time, it is of fundamental importance that the interests of children be considered. Both courts and legislatures have expressed concern that children who are victims of sexual abuse may be traumatized by testifying in court against their alleged abusers. *See People v. Diefenderfer,* 784 P.2d 741 (Colo.1989); *see generally* Colorado Legislative Council, *Report to the General Assembly: Recommendations for 1983, Committee on Child Molestation,* Research Pub. No. 276 (1982).

The General Assembly enacted § 13–25–129 to balance the interests of a person accused of sexual abuse of a child and the interests of the truth-seeking process. *See People v. McClure,* 779 P.2d 864 (Colo.1989). Moreover, this statute "effects the substantive policy of protecting ... child witnesses ... from the sometimes traumatizing effect of facing their abusers in open court." *People v. Diefenderfer, supra,* 784 P.2d at 753.

Section 13–25–129 provides in pertinent part:

(1) An out-of-court statement made by a child ... describing any act of sexual contact, intrusion, or penetration ... performed with, by, on, or in the presence of the child declarant, not otherwise admissible by a statute or court rule which provides an exception to the objection of hearsay, is admissible in evidence in any criminal, delinquency, or civil proceedings in which a child is a victim of an unlawful sexual offense ... if:

(a) The court finds ... that the time, content, and circumstances of the statement provide sufficient safeguards of reliability; and

(b) The child either:

(I) Testifies at the proceeding; or

(II) Is unavailable as a witness and there is corroborative evidence of the act which is the subject of the statement.

(2) If a statement is admitted pursuant to this section ... it is for the [fact finder] to determine the weight and credit to be given the statement and that, in making the determination, it [fact finder] shall consider the age and maturity of the child, the nature of the statement, the circumstances under which the statement was made, and any other relevant factor.

The scope of § 13–25–129 includes evidence that is not otherwise admissible by a statute or court rule which provides an exception to the hearsay rule. *See People v. Bolton,* 859 P.2d 311 (Colo.App.1993). The section applies specifically to "criminal, delinquency, or civil proceedings." And, in such proceedings, the section provides the exclusive basis for admitting a child victim's hearsay statement of a sexual offense committed

against the child when such a statement would not otherwise be admissible under any specific hearsay exception created by statute or court rule. *People v. Wilson,* 838 P.2d 284 (Colo.1992).

■ Day care license revocation proceedings are civil in nature, but they occur in an administrative agency context. *See* § 26–6–108; *cf. Colorado Department of Revenue v. Kirke,* 743 P.2d 16 (Colo.1987)(driver's license revocation proceeding is of a civil nature). Thus, by its plain language, § 13–25–129 applies to such proceedings when the admissibility of a child's hearsay statement regarding sexual abuse is at issue. Further, the statute provides a logical and useful framework for analyzing the reliability and probative value of the hearsay statements of children in the context of an administrative adjudication.

For these reasons, we hold that, in administrative proceedings, § 13–25–129 should govern the admissibility of a child's hearsay statement regarding alleged sexual abuse.

### B.

Plaintiffs next argue that the ALJ failed properly to apply the standards set out in § 13–25–129 before admitting the child's hearsay statements. Examining the ALJ's findings and conclusions in light of the statutory framework, we perceive no error.

In his order admitting the child's hearsay statements, the ALJ determined that: "In the context of proof by out-of-court statements the A.P.A., [§ 13–25–129] and residual exception tests are the same although the pre-hearing procedural requirements are not as strict under the A.P.A." Thus, the ALJ did not specifically apply the statute before determining that the statements were admissible.

Rather, the ALJ reasoned that: "[T]he reliability and probative value of [the victim's] statements is the essential test." He then proceeded to evaluate the reliability of the child's statements in the contexts in which they had been made. He then made detailed findings of fact regarding the reliability of the child's statements and determined that the statements were sufficiently reliable to be admitted at the hearing.

■ Under § 13–25–129, a child's hearsay statement is admissible only after two findings are made. First, the time, content, and circumstances of the statement must provide sufficient safeguards of reliability. Second, if the child is not available as a witness, there must also be corroborative evidence of the act which is the subject of the statement. *Stevens v. People,* 796 P.2d 946 (Colo.1990).

1.

■ In determining whether the time, content, and circumstances of the statement provide sufficient safeguards of reliability, the following factors, which are neither exclusive nor dispositive, provide guidance: (1) whether the statement was spontaneous; (2) whether the statement was made while the child was still upset or in pain from the alleged abuse; (3) whether the language of the statement was likely to have been used by a child the declarant's age; (4) whether the allegation was made in response to a leading question; (5) whether either the child or the hearsay witness has any bias against the accused person or any motive for lying; (6) whether any other event occurred between the time of the abuse and the time of the statement which could account for the contents of the statement; (7) whether more than one person heard the statement; and (8) the general character of the child. *People v. District Court,* 776 P.2d 1083 (Colo.1989); *People v. Trujillo,* No. 93CA1990, —— P.2d ——, 1996 WL 28679 (Colo.App., January 25, 1996).

■ Here, the ALJ found that the child's statements to the psychologist were spontaneous, did not result from leading questions, and were phrased in age-appropriate descriptive language. Moreover, at the evidentiary hearing, the psychologist testified that her initial interviews with the child and her parents had revealed no indication that they had any motive to fabricate the allegations of abuse.

The ALJ noted that some of the child's statements to her parents were the result of specific leading questions "which could arguably be construed as suggestive." Thus, the

ALJ admitted evidence of these statements with the proviso that he would assess its weight based, in part, on the leading nature of the questions that gave rise to the child's responses.

While the ALJ did not identify the specific factors relating to "time, content, and circumstances" that rendered the child's statements reliable, there was, nevertheless, an adequate factual basis presented during the evidentiary hearing to support his conclusion that the statements were reliable. *See People v. Bowers*, 801 P.2d 511 (Colo.1990).

### 2.

Because the parties stipulated that the child was "unavailable" to testify at the later hearing on the merits, we must determine whether the findings made by the ALJ support his conclusion that there was sufficient corroboration for the child's statements.

■ Corroborative evidence, for purposes of § 13–25–129, means evidence, whether direct or circumstantial, that tends to establish the sexual offense described by the child. Further, the quantum of corroborative evidence necessary to support the admission of a child's hearsay statement must be sufficient to induce a person of ordinary prudence and caution conscientiously to entertain a reasonable belief that the sexual abuse occurred. *People v. Bowers, supra.*

Here, the ALJ made findings which support the conclusion that there was adequate corroboration for the child's statements. He noted that the child's non-communicative behavior, described by the psychologist as "sexualized," indicated that the child had some basis in experience for her statements. Further, the ALJ credited the expert testimony of the psychologist that the child was suffering from post-traumatic stress. And, the ALJ found that a relative of the child had observed the child exhibiting masturbatory behavior.

Thus, while the ALJ did not specifically link these findings to the corroboration requirements of § 13–25–129, we view these findings, which are supported by the record, as sufficient to satisfy the statute. *See People v. Bowers, supra.*

### II.

■ Plaintiffs also assert that the district court erred in determining that the ALJ's decision was supported by substantial evidence and was not arbitrary and capricious. We perceive no error.

■ The decision of an administrative agency must be upheld on review if consideration of the record as a whole reveals that the decision is supported by substantial evidence in the record. *Partridge v. State, supra.*

■ "Substantial evidence" is that which is probative, credible, and competent. It is evidence that would warrant a reasonable belief in the existence of facts supporting a particular finding, without regard to the existence of contradicting testimony or contradictory influences. *Allen Co. v. Industrial Commission*, 762 P.2d 677 (Colo.1988).

■ Hearsay statements may constitute substantial evidence to support an administrative agency decision. *Industrial Claims Appeals Office v. Flower Stop Marketing Corp.*, 782 P.2d 13 (Colo.1989).

■ Similarly, to decide whether an administrative agency's decision is arbitrary or capricious, the court must determine whether a reasonable person, considering all of the evidence in the record, would fairly and honestly be compelled to reach a different conclusion. If not, no abuse of discretion has occurred and the agency decision must be upheld. *Ramseyer v. Colorado Department of Social Services*, 895 P.2d 1188 (Colo.App. 1995).

Pursuant to § 26–6–108(2)(*l*), a license to operate a child care center may be revoked "if substantial evidence is found that the licensee ... or person who resides with the licensee in the licensed facility has committed an act of child abuse. For the purposes of this paragraph (*l*), 'child abuse' has the same meaning as that ascribed to it in section 19–3–303(1), C.R.S."

Section 19–3–303(1)(a)(II), C.R.S. (1995 Cum.Supp.) defines "abuse" to include "[a]ny case in which a child is subjected to sexual assault or molestation, sexual exploitation, or prostitution."

Here, the ALJ heard testimony regarding statements the child had allegedly made to her parents and to a psychologist. In these statements, the child indicated that she had been subjected to sexual abuse and stated that her grandfather, plaintiff Don McPeck, was the person responsible for this abuse. The ALJ found that the statements were especially credible because the child consistently recounted her experiences to several people over the course of time.

Moreover, the ALJ found that the child's statements to the psychologist were spontaneous and that they were corroborated by evidence of the child's sexualized behavior and her expressions of fear during play therapy sessions. Based on all of this evidence, the ALJ concluded that the child had been the victim of child abuse by plaintiff Don McPeck.

On this record, a reasonable person would not have been compelled to reach a conclusion contrary to that of the ALJ. Thus, the order revoking plaintiffs' license was based on sufficient evidence and was neither arbitrary nor capricious. *See Partridge v. State, supra; Ramseyer v. Colorado Department of Social Services, supra.*

The order is affirmed.

DAVIDSON and RULAND, JJ., concur.